UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-07155-CAS-DSRx | Date | September 14, 2026 |
| Title | Jed Goodman v. NZK Productions, Inc. et al | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Gregory Cavallo | Adam Levin<br>Gary McLaughlin |

**Proceedings:** ZOOM HEARING RE: DEFENDANTS NZK PRODUCTIONS, INC. AND WARNER BROS. ENTERTAINMENT, INC.’S MOTION TO DISMISS CASE (Dkt. 14, filed on July 29, 2026)

DEFENDANTS NZK PRODUCTIONS, INC. AND WARNER BROS. ENTERTAINMENT, INC.’S REQUEST FOR JUDICIAL NOTICE (Dkt. 15, filed on July 29, 2026)

## I. INTRODUCTION

On April 6, 2026, plaintiff Jed Goodman (“plaintiff”) filed a complaint against defendants NZK Productions, Inc. and Warner Bros. Entertainment, Inc. (collectively, “defendants”) in Los Angeles County Superior Court, alleging six claims for relief: (1) Breach of contract; (2) Failure to pay earned wages (Cal. Lab. Code §§ 200, 204, 1194, 1198; IWC Wage Order); (3) Failure to pay overtime compensation (Cal. Lab. Code §§ 200, 204, 1194; Cal. Lab. Code §§ 510, 1194, 1198; IWC Wage Order); (4) Waiting time penalties (Cal. Lab. Code § 203); (5) Failure to provide accurate itemized wage statements (Cal. Lab. Code § 226); and (6) Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.). Dkt. 3-1 (“Compl.”).

On June 18, 2026, plaintiff filed his First Amended Complaint (“FAC”) in Los Angeles County Superior Court, adding a federal claim that the International Alliance of Theatrical Stage Employees (“IATSE”) Local 700 Union (“Union”) breached its duty of

fair representation to plaintiff by failing to pursue claims on his behalf pursuant to the collective bargaining agreement (“CBA”)’s grievance procedures. Dkt. 3-8 (“FAC”).

On July 1, 2026, defendants removed the case to this Court based on federal question jurisdiction, asserting that plaintiff’s claims expressly invoke Section 301 of the Labor Management Relations Act (“LMRA”) and that this Court has supplemental jurisdiction over plaintiff’s state law claims to the extent not preempted by Section 301. Dkt. 3.

On July 29, 2026, defendants moved to dismiss the FAC, dkt. 14, and filed a request for judicial notice, dkt. 15. On August 24, 2026, plaintiff filed his opposition. Dkt. 16. On August 31, 2026, defendants filed a reply. Dkt. 17.

On September 14, 2026, the Court held a hearing. Having carefully considered the parties’ arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff alleges the following in his FAC.

From approximately 2017 through April 2025, plaintiff worked as a Tape Librarian/Assistant Tape Editor on the *Bachelor* television franchise for Defendant NZK Productions, Inc. FAC ¶ 3. Defendant Warner Bros. Entertainment Inc. is alleged to be responsible under successor-liability, join-employer, agency, alter-ego, and related theories pleaded in the alternative. Id. ¶ 5.

Plaintiff’s compensation was governed in substantial part by an applicable IATSE supplemental agreement between the Alliance of Motion Picture and Television Producers and IATSE (the “CBA”). Id. ¶ 10. Plaintiff was a third-party beneficiary of the CBA as to wages and premium compensation for work performed for defendants’ benefit. Id.

From August 2022 to April 2025, plaintiff worked a scheduled overnight shift and performed additional work outside of his scheduled hours. Id. ¶¶ 11-14. That additional work included work during contractually protected rest periods and weekend calls that triggered turnaround or forced-call provisions, elapsed-hour premiums, sixth- and seventh-day premium rules, and invaded-rest premiums. Id. ¶¶ 11, 14, 26. Defendants

requested, knew of, and benefited from the work but did not pay all required wages and premium compensation. Id. ¶¶ 12-15.

The CBA contains a mandatory grievance-and-arbitration procedure for disputes arising under its terms, including disputes concerning premium compensation for off-shift work and invaded rest periods. Id. ¶ 16. In May 2025, plaintiff presented his claim for unpaid contractual premium wages to his Union and supplied a detailed spreadsheet documenting the off-shift work. Id. ¶ 17. Plaintiff repeatedly followed up with the Union in writing and by telephone throughout the summer and fall of 2025, asking about the status of its pursuit of his claim. Id.

The Union did not investigate the claim, file or advance a grievance on plaintiff’s behalf, or communicate to plaintiff a decision either agreeing or refusing to pursue the matter. Id. ¶ 18. Plaintiff’s last direct communication with the Union was on October 9, 2025, which was a telephone conversation.[1] Id. Plaintiff waited “further weeks for news from [the Union] on the grievance procedure, but did not discover, and could not reasonably have discovered, that the Union had breached [] its duty of fair representation until late October 2025.” Id.

Plaintiff filed the initial complaint in Los Angeles Superior Court on April 6, 2026. See generally Compl. Plaintiff filed his FAC in Los Angeles Superior Court on June 18, 2026. See generally FAC.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if “there is a ‘lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.’” Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep’t, 901 F.2d 696, 699 (9th Cir. 1988)). “While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff’s obligation to provide the ‘grounds’ of his ‘entitlement to relief’ requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.”

[1] Plaintiff does not describe the content of that conversation.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all of plaintiff's claims. See generally Mot. Defendants also request that this Court take judicial notice of six documents. See generally Dkt. 15. The Court addresses defendants' request for judicial notice first before turning to the defendants' Rule 12(b)(6) argument.

### A. Request for Judicial Notice

Defendants requests the Court take judicial notice of the following documents: (1) Initial Complaint filed by plaintiff in the Los Angeles County Superior Court; (2) First Amended Complaint filed by plaintiff in the Los Angeles County Superior Court; (3) California Department of Finance's Minimum Wage Increase Calculation of Adjustment issued on August 1, 2025; Frequently Asked Questions regarding the California State Minimum Wage from the State of California Department of Industrial Relations; (4) Videotape Electronics Supplemental Basic Agreement of 2018; (5) Memorandum of Agreement of October 1, 2021 for the Producer – I.A.T.S.E. and M.P.T.A.A.C. Videotape Electronics Supplemental Basic Agreement; and (6) 2024 I.A.T.S.E. Basic Agreement MOA. Dkt. 15.

Pursuant to the Federal Rules of Evidence, the Court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). "[U]nder Federal Rule of Evidence 201, a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

Federal courts can "take notice of proceedings in other courts, both within and [outside of] the federal judicial system, if those proceedings have a direct relation to the matters at issue." San Luis v. Badgley, 136 F. Supp. 2d 1136, 1146 (E.D. Cal. 2000) (quoting U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

This Court may take judicial notice of records of state agencies as well. See Bovarie v. Giurbino, 421 F.Supp.2d 1309, 1313 (S.D. Cal. 2006) ("[A] court 'may take

judicial notice of a record of a state agency not subject to reasonable dispute.’”) (quoting City of Sausalito v. O’Neill, 386 F.3d 1186, 1223 n.2 (9th Cir.2004)); Disabled Rts. Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (“Under Federal Rule of Evidence 201, we may take judicial notice of the records of state agencies and other undisputed matters of public record.”).

Courts also regularly find CBAs to be the proper subject of judicial notice when determining pleading challenges based on LMRA preemption. See Sarmiento v. Sealy, Inc., 367 F. Supp. 3d 1131, 1142-43 (N.D. Cal. 2019) (taking judicial notice of CBA for Rule 12(c) motion based on LMRA preemption).

Plaintiff does not oppose defendants’ request for judicial notice and only objects to “treating the extrinsic assertions in the Lettunich Declaration as established facts concerning which agreements governed his employment, NZK’s contractual status, or the completeness of Defendants’ agreement package.” Opp. at 23. Because plaintiff does not oppose defendants’ request for judicial notice, the Court grants defendants’ unopposed requests for judicial notice.

### B. Motion to Dismiss

Defendants argue that plaintiff’s state law claims are all preempted by Section 301 of the LMRA because the claims are predicated on rights created by the CBA. Mot. at 15-20. Defendants further argue that plaintiff’s claims should be dismissed because the CBA imposes mandatory grievance procedures that plaintiff has failed to exhaust. Id. at 21.

Plaintiff counters that defendants do not establish that every state law claim he has asserted is preempted and that at least some of his claims remain viable on state-law grounds. Opp. at 22-25. Plaintiff further argues that his failure to exhaust the mandatory grievance procedures should not bar his suit in this forum because his Union breached its duty of fair representation to him. Id. at 13-14.

But defendants argue that plaintiff’s federal claim (“hybrid Section 301 claim”) regarding the Union’s breach of its duty of fair representation cannot save plaintiff’s preempted claims from dismissal because it is time-barred. Mot. at 22-24; Reply 1-5.

Plaintiff counters that it is timely because it relates back to the original complaint which was filed within the six-months statute of limitations prescribed for hybrid Section 301 claims. Opp. at 14-19.

The Court is thus faced with a two part inquiry: first, the Court must determine which, if any, of plaintiff's state law claims are preempted by Section 301, and which, if any, remain viable on independent state-law grounds; and second, if the Court finds that any of plaintiff's state law claims are preempted by Section 301, it must then determine whether those preempted claims should be dismissed because plaintiff has failed to exhaust the CBA's mandatory grievance procedures (as defendants contend), or whether those claims should be allowed to proceed as part of plaintiff's hybrid Section 301 claim (as plaintiff contends). The second part of the Court's inquiry consequently turns on whether plaintiff's hybrid Section 301 claim was timely raised.

1. Preemption

"Section 301 of the LMRA preempts state law claims that are based directly on rights created by a collective bargaining agreement, and also preempts claims that are substantially dependent on an interpretation of a collective bargaining agreement." Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1014 (9th Cir. 2000); Firestone v. S. Cal. Gas Co., 281 F. 3d 801, 802 (9th Cir. 2002). The Supreme Court has explained that the "preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Franchise Tax. Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 23 (1983) (quotation marks omitted). The preemptive effect of Section 301 is broad, "extend[ing] beyond suits alleging contract violations." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985).

"To determine whether a claim is preempted under the LMRA, courts look to the underlying character of the claim itself." Radcliff v. San Diego Gas & Elec. Co., 519 F.Supp.3d 743, 748 (S.D. Cal. 2021) (citing Alaska Airlines Inc. v. Schurke, 898 F.3d 904, 921 (9th Cir. 2018)). Thus, pursuant to the "artful pleading" doctrine, a claim is preempted by Section 301 if the nature of the claim depends upon a CBA, even if the plaintiff omits reference to the CBA in his lawsuit or purports to base his claims on state law. Hyles v. Mensing, 849 F.2d 1213, 1216 (9th Cir. 1988) ("[W]e do not look to how the complaint is cast. Rather, we inquire whether 'the claim can be resolved only by referring to the terms of the CBA.'"); Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044,

1048 (9th Cir. 1987) (accord); Howerton v. Earthgrains Baking Cos., Inc., No. 1:13-CV-01397-AWI-SM , 2013 WL 6512889, at *3 (E.D. Cal., Dec. 12, 2013) ("Whether or not the complaint explicitly refers to the collective bargaining agreement is not dispositive. [. . .] [P]reemption exists . . . if the state claims are 'substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract.'") (internal citations omitted).

The Ninth Circuit applies the two-step Burnside test (named for Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007)) to determine whether Section 301 preemption applies:

Step 1 "ask[s] whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" Curtis v. Irwin Indus., Inc., 913 F.3d 1146, 1152-53 (9th Cir. 2019). If so, "'the claim is preempted, and [the] analysis ends.'" Id.; see also Schurke, 898 F.3d at 926 (9th Cir. 2018) (same).

Step 2 applies if preemption is not required at Step 1, and asks if resolution of the dispute is "substantially dependent on analysis of" the CBA. Curtis, 913 F.3d at 1153. This turns on whether the claim requires interpretation of the CBA, meaning questions "about the scope, meaning, or application of the CBA." Id. If so, the claim is preempted. Id.

For reasons given below, the Court concludes that all state law claims but one are preempted by Section 301.

*a. First Cause of Action: Breach of Contract*

Plaintiff appears to concede that this claim is preempted by Section 301. Opp. at 22-25.

And plaintiff could not contend otherwise. Plaintiff alleges that he is "an intended third-party beneficiary of [the CBA's] wage and premium provisions," FAC ¶ 24, and that "[d]efendants materially breached [the CBA] by failing to pay Plaintiff mandatory *premium compensation* for *off-shift work* … including *premium pay* required by turnaround/forced call provisions, elapsed-hour premiums (including Golden Hour and Triple Time where applicable), sixth/seventh day rules, and invaded rest premiums as applicable," id. ¶ 26 (emphasis added). Plaintiff's breach of contract claim is thus

effectively a claim for the breach of the CBA and is therefore subject to preemption and recharacterization as Section 301 claims for breach of contract under Step 1 of Burnside.

Accordingly, this cause of action is preempted by Section 301.

*b. Second Cause of Action: Failure to Pay Earned Wages (Cal. Lab. Code §§ 200, 204, 1194, 1198; IWC Wage Order)*

The second cause of action encompasses two separate state law claims: one based on the timing of payment under Section 204 of the California Labor Code and the other based on Sections 1194 and 1198 of the California Labor Code. Opp. at 23. The Court addresses each in turn.

(1) Claim Related to the Timing of Payment under Section 204 of the California Labor Code

Section 204 requires that wages "earned by any person in any employment are due and payable twice during each calendar month …" Cal. Lab. Code § 204(a). However, Section 204 provides that "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees." Id. § 204(c).

Here, the CBA establishes a weekly payroll schedule, with the regular payday on Thursday, or on Friday for employees working on distant location. See Lettunich Decl., Ex. 1, Section 18(a) ("The regular pay day will be on Thursday, holidays weeks excluded . . . [and] on Friday for employees working on distant location."). A weekly payroll schedule is a "different pay arrangement[]" than the semi-monthly schedule required by Section 204(a), thus exempting defendants from Section 204's default rules and barring plaintiff's claim under Step 1 of Burnside.

"Plaintiff's timely payment claim under section 204 therefore exists solely as a result of the CBA and is preempted by section 301 of the LMRA." Schwanke v. Minim Prods., Inc., No. 221CV00111SVWJPR, 2021 WL 4924772, at *5 (C.D. Cal. May 24, 2021); accord Tolentino v. Gillig, LLC, 2021 WL 121193, at *3 (N.D. Cal. 2021) (holding that because "the subject CBA provides for . . . the payment of wages on a weekly basis . . . [plaintiff's] right to the timely payment of wages 'exists solely as a result [of] the CBA'") (citation omitted).

(2) Claims for Nonpayment of Wages and Failure to Pay Minimum Wage under Sections 1194 and 1198 of the California Labor Code

Plaintiff does not dispute that his second cause of action is preempted by Section 301 to the extent that it is based on unpaid premium or overtime wages. Opp. at 23 (citing FAC ¶¶ 21-22, 24-27). However, plaintiff argues that his second cause of action asserts a failure to pay state law minimum wage claim based on Sections 1194 and 1198 of the California Labor Code that is distinct from his nonpayment of premium/overtime wages and Section 204 timing claims and that the claim is therefore not preempted by the CBA. Id.

Yet plaintiff's FAC makes no reference to minimum wages and gives no indication that the cause of action is based on anything other than unpaid premium and overtime wages. See generally FAC. The Court thus dismisses the second cause of action as it relates to the state law minimum wage claim for failure to state a claim, without prejudice.

*c. Third Cause of Action: Failure to Pay Overtime Compensation (Cal. Lab. Code §§ 200, 204, 1194; Cal. Lab. Code §§ 510, 1194, 1198; IWC Wage Order)*

The Ninth Circuit instructs that if the CBA in question meets the requirements of Section 514 of the California Labor Code, the plaintiff's right to overtime exists solely as a result of the CBA and is thus preempted under Section 301. Curtis, 913 F.3d at 1154. Under Section 514, California's overtime provisions "do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.

Here, the CBA that governed plaintiff's employment meets all of the requirements of Section 514. The CBA explicitly "provides for the wages, hours of work, and the working conditions of the employees." Lab. Code § 514; see Mot. at 18-20 (citing Lettunich Decl., Ex. 1, Sections 15 (Wages), 16 (Night Premiums), 19 (Workweek), 20 (Workday), 21 (Overtime), 23 (Studio Zone and Secondary Studio Zone), 26 (Golden Hour Provisions), 29 (Travel Time, Work and Travel Conditions, Pay Provisions and Hazardous Pay), 31 (Holidays), 32 (Vacations), 33 (Severance Pay), 34 (Pension,

Welfare and Miscellaneous), 35 (Other Working Conditions); Ex. 2, Sections 2 (Wage Rates), 3 (Pension, Welfare and Miscellaneous), 10 (Paid Sick Leave), 11 (Four Hour Minimum Call); Ex. 3, Sections 2 (Wages), 3 (Pension and Health and Residuals), 9 (Triple Time), 10 (Seventh Days and Holidays for "On Call" Employees), 15 (Vacations), 16 (Severance Pay), 18 (Paid Sick Leave), and 19 (Bereavement Leave)).

Moreover, the CBA "provides premium wage rates for all overtime hours worked." Cal. Lab. Code § 514; see Mot. at 18-20 (citing Lettunich Decl., Ex. 1, Section 21(a)-(b) ("Daily employees shall be paid at one and one half (1 ½) times their Regular Basic Hourly Rate of pay for all worked performed in excess of eight (8) straight time hours on any workday and/or in excess of forty (40) straight time hours in any workweek," as well on an employee's "sixth day of work within a workweek.")).

Finally, the wages provided by the CBA are "not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. The lowest hourly wage rate provided for by the IATSE CBA (for Entry Level Videotape Operator) is $30.38 per hour, exceeding the current state minimum wage of $16.90 by well over 30%. Mot. at 18-20 (citing Lettunich Decl., Ex. 1, Section 15; Lab. Code § 1182.12; Notice of Minimum Wage Increase; https://www.dir.ca.gov/dlse/faq_minimumwage.htm (McLaughlin Decl. Exs. 3, 4)).

Because Section 514's exemption applies, plaintiff's entitlement to overtime arises solely under the CBA, and the Court concludes that his third cause of action is therefore preempted by Section 301 under Step 1 of Burnside.

*d. Fourth, Fifth, Sixth Causes of Action: Waiting time penalties (Cal. Lab. Code § 203); Failure to provide accurate itemized wage statements (Cal. Lab. Code § 226); and Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.)*

The remaining alleged violations of the California Labor Code are all derived from plaintiff's preempted claims, and they accordingly fail for the same reasons the foundational claims fail as described above. See Giles v. Canus Corp., No. 22-CV-03097-MMC, 2022 WL 3370793, at *6-7 (N.D. Cal. Aug. 16, 2022) (finding derivative claims for wage statement violations, waiting time penalties, and UCL violation preempted where underlying minimum wage, overtime, and meal periods claims were preempted by Section 301); Vasquez v. Packaging Corp. of Am., Case No. CV 19-1935 PSG (PLAx), 2019 WL 4543106, at *4 (C.D. Cal. June 7, 2019) (where overtime claim

was preempted by Section 301, remaining claims for wage statement violations, waiting-time penalties, and UCL violations were similarly preempted "to the extent they [were] derivative of [the] overtime claim"); Oswald v. MV Transp., Inc., No. 25-cv-00696-AMO, 2026 LX 18834, at *19 (N.D. Cal. Jan. 5, 2026) (finding that plaintiff's claims for wage statement violations, unlawful deductions, waiting time penalties, and UCL were derivative of his preempted claims and "accordingly fail for the same reasons those foundational claims fail").

Accordingly, the Court finds that all of plaintiff's claims are preempted by Section 301 or otherwise dismissed for failure to state a claim.

2. Plaintiff's Ability to Proceed in This Forum

When Section 301 preempts a state law claim, the claim "must either be treated as a §301 claim", or if the applicable CBA imposes mandatory grievance procedures for the resolution of claims, "dismissed as pre-empted by federal labor-contract law." Allis-Chalmers Corp., 471 U.S. at 220-21 (holding that the "complaint should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement, or dismissed as pre-empted by § 301") (internal citations omitted); see also Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1476 (9th Cir. 1984) ("[Plaintiff's] exclusive remedies lay under the grievance procedures of the collective bargaining agreement . . . . [H]e . . . cannot maintain a section 301 suit independent of the procedural requirements of the [CBA].").

Although mandatory grievance procedures in a CBA preclude an employee from suing in court for breach of the CBA, an exception to this general rule exists where "the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." Vaca v. Sipes, 386 U.S. 171, 184-86 (1967) (wrongfully discharged employee permitted to bring action against his employer despite failure to exhaust contractual remedies where union breached duty of fair representation). "In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1993). Such actions are referred to as "hybrid" Section 301 claims. Id. at 165; accord Allen v. United Food & Com. Workers Int'l Union, AFL-CIO, CLC, 43 F.3d 424, 426 n.1 (9th Cir. 1994) (quoting Gardner v. Int'l Tel Emps. Loc. No. 9, 850 F.2d 518, 520 n.2 (9th Cir. 1988)); Dean v. S. California Edison, No. EDCV1201435MWFDTBX, 2013

WL 12144105, at *2 (C.D. Cal. Oct. 21, 2013); Pierce v. Kaiser Found. Hosps., No. CV 09-03837 WHA, 2010 WL 4590930, at *13 (N.D. Cal. Nov. 4, 2010), aff'd, 470 F. App'x 649 (9th Cir. 2012).

A hybrid Section 301 suit, "as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act." DelCostello, 462 U.S. at 164. An employee pursuing a hybrid Section 301 claim is not required to sue both his employer and union. Id. at 165. "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." Id. Thus, even where a hybrid action is "brought solely against the employer … the employee bears the burden of proving two claims—first, that the employer breached the collective bargaining agreement, and second, that the labor union breached its duty of fair representation." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 987 (9th Cir. 2007); see also DelCostello, 462 U.S. at 164; Vaca, 386 U.S. at 186.

The parties do not dispute that the applicable CBA imposes mandatory grievance procedures for the resolution of claims and that plaintiff failed to exhaust those procedures. See generally Mot.; Opp.; Reply. However, the parties dispute whether an exception to the general rule (i.e., that mandatory grievance procedures in a CBA preclude an employee from suing in court for breach of the CBA) has any force here. Id.

Plaintiff argues in the affirmative. Specifically, plaintiff argues that his failure to exhaust the mandatory grievance procedures is excused by the Union's breach of its duty of fair representation and that because he raised that federal claim in a timely manner, his state law claims now recharacterized as a Section 301 claim should proceed as part of his hybrid Section 301 claim. See generally Opp.

Defendants do not seem to dispute that the labor union breached its duty of fair representation but instead argue that the claim is time-barred. See generally Mot.; Reply.

This inquiry thus turns on whether plaintiff's hybrid Section 301 claim was timely raised.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-07155-CAS-DSRx | Date | September 14, 2026 |
| Title | Jed Goodman v. NZK Productions, Inc. et al | | |

Hybrid Section 301 claims are subject to a six-month statute of limitations. Smith v. United Airlines, Inc., 673 Fed. App’x. 720, 721 (9th Cir. 2016). “[T]he six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union.” Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir. 1986). “[W]here a union decides not to file a grievance, the cause of action generally accrues when the employee learns or should have learned of the union’s decision.” Id.

Here, plaintiff alleges that “[i]n or about May 2025, [p]laintiff presented his claim for unpaid contractual premium wages under [the CBA] to [the Union]” and that plaintiff “repeatedly followed up with [the Union] in writing and by telephone throughout the summer and fall of 2025, inquiring about the status of the Union’s pursuit of a grievance on his behalf.” FAC ¶ 17. Plaintiff further alleges that despite those “repeated and diligent” follow-up requests, the Union “failed and refused to investigate the merits of [p]laintiff’s claim, failed to file or advance any grievance on his behalf through the contractual grievance procedure, and failed to communicate any decision—either agreeing or refusing to pursue [p]laintiff’s claim—to [p]laintiff at any time.” Id. ¶ 18. Plaintiff also alleges that the “last direct communication [plaintiff had with the Union] was an October 9, 2025[] telephone conversation.” Id. It is thus apparent from the face of the FAC that plaintiff should have known about these violations at the latest by October 9, 2025, the last direct communication plaintiff had with the Union. Id. ¶ 18. The statute of limitations thus expired at the latest by April 9, 2026, more than two months before the FAC was filed on June 18, 2026. Accordingly, the claim is time-barred.

But plaintiff argues that California’s relation back law governs, and that under that law, plaintiff’s new allegation is timely because it relates back to the original complaint filed on April 6, 2026—three days before the statute of limitations expired. Opp. at 14-19. Defendants argue that whether California or federal law applies on this point, it would not change the result that the claim is time-barred. Reply 1-5. The Court agrees with defendants.

“California and federal law are similar with respect to the relation-back doctrine, [and] California courts look to federal decisions in applying the doctrine.” Pointe San Diego Residential Cmty., L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP, 195 Cal. App. 4th 277, n.5 (2011). In fact, “the Federal Rules are more permissive than the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-07155-CAS-DSRx | Date | September 14, 2026 |
| Title | Jed Goodman v. NZK Productions, Inc. et al | | |

California relation back rules." Jacobo v. Los Angeles Cnty., No. CV 11-7212-GW(SSX), 2012 WL 13012481 at *5 (C.D. Cal. May 10, 2012); see also White v. City of Los Angeles, No. CV 19-00243 DDP (RAOX), 2020 WL 9893054 at *7 (C.D. Cal. July 24, 2020).

Under California law, an amendment relates back when it rests on the same general set of facts, involves the same injury, and refers to the same instrumentality as the original pleading. Norgart v. Upjohn Co., 21 Cal. 4th 383, 408-09 (1999).

Rule 15(c)(1)(B) asks whether the amended claim arose from the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). For an amendment to relate back, "the original and amended pleadings [must] share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." Martell v. Trilogy Ltd., 872 F.2d 322, 325 (9th Cir. 1989).

Here, plaintiff introduced an entirely new set of facts by asserting his hybrid Section 301 claim in the FAC, alleging for the first time that (1) he presented his claim to the Union, (2) he repeatedly followed up with the Union, and (3) the Union failed and refused to investigate, file or advance any grievance, or communicate any decision regarding his claim. FAC ¶¶ 17-21; see also Opp. at 7 (conceding the FAC's "additional allegations . . . supply the duty-of-fair-representation component necessary to maintain the hybrid claim").

Plaintiff's initial complaint does not indicate that he ever attempted to pursue a grievance with the Union. See generally Compl. While the initial complaint alleges that plaintiff was a member of the Union and that his compensation was governed by the CBA, those facts do not suggest any breach of duty by the Union. Id. ¶¶ 10-11. There is nothing in the initial complaint to put defendants on notice that they might have to defend against hybrid allegations that the union breached its obligations towards plaintiff. Nor does plaintiff allege any facts suggesting that defendants would have had any reason to know about the Union's alleged inactions with respect to plaintiff's claims. See Scott v. Virginia Port Auth., No. 2:17CV176, 2018 WL 3232825, at *7 (E.D. Va. Feb. 7, 2018), report and recommendation adopted, No. 2:17CV176, 2018 WL 1508592 (E.D. Va. Mar. 27, 2018) ("The relation back inquiry here is not whether [the union] was put on notice in the original complaint, because plaintiffs suing under a § 301[] theory need not sue their union at all […, but] whether [plaintiff's] employer] was on notice that it would have to

defend against a claim that [plaintiff] was not fairly represented by his union during the grievance procedure, and whether there is a sufficient factual nexus between the claims in the original and amended complaints.") (internal citation and quotation omitted).

Plaintiff's added claim in his FAC thus rests on different facts than, and involves a separate injury from, the claims in his initial complaint. "Courts have further found that a claim related to the grievance or arbitration procedure and a claim related to the underlying grievance do not share a common set of operative facts." See id. at *8 (citing Wolf Mech, Inc. v. Plumbers Local No. 98 Detroit MI of the United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the U.S. and Canada, AFL-CIO, No. 07-14199, 2008 WL 11355533, at *3 (E.D. Mich. Nov. 10, 2008); Penn. Eng'g Corp. v. Islip Recovery Agency, 714 F. Supp. 634, 638 (E.D.N.Y. 1989)).

As such, the Court finds that plaintiff's added claim does not relate back to the original pleading. See id. (finding that the allegation of the union's breach of its duty of fair representation added in a plaintiff's FAC does not relate back because the original complaint did not include allegations of the union's "actions, or *inactions*, in bringing [plaintiff's] claim") (emphasis added); cf. Rogers v. Jewel Food Stores, Inc., No. 13 C 6761, 2014 WL 4913673, at *3 (N.D. Ill. Sept. 30, 2014) (finding that the allegation of the union's breach of its duty of fair representation added in a plaintiff's FAC related back because the original complaint "narrates [plaintiff's] suspension and termination, including her interaction with the Union and attempt to grieve the termination notice").

Accordingly, the claim is time-barred, and plaintiffs' preempted claims are dismissed on that basis.[2]

---

[2] At the September 14, 2026 hearing, plaintiff argued that the cases that defendants rely on for the relation-back issue are distinguishable because those cases involve a hybrid Section 301 claim based on completed arbitration proceedings whereas this case involves a hybrid Section 301 claim based on the Union's failure to take any action, including initiating an arbitration proceeding. Plaintiff further argued that the case that mirrors the fact pattern of this case most closely is Bryant v. General Packaging Products, Inc., 473 F. Supp. 2d 853, 857–58 (N.D. Ill. 2006) because there, too, the union failed to act and argued that the case aids plaintiff because it ruled favorably for the Bryant plaintiff on the relation-back issue.

---

The Court is not persuaded by plaintiff's argument that the Bryant case helps him. There, although the Northern District of Illinois found that the amended complaint relates back to the plaintiff's original complaint because "both claims still rely on a common core of operative facts," the Court explicitly articulated that that was "particularly true *given that [the plaintiff's] original complaint did allege that the Union [. . .] was generally unreceptive to [the plaintiff's] complaints about his treatment [by his employer].*" Id. (emphasis added). Furthermore, the Bryant plaintiff had "prepared his original complaint *pro se*" and the court consequently had "give[n] it a generous interpretation." Id. Here, the original complaint did not allege anything about the Union's reactions to plaintiff's grievances against his employer, much less allege anything about the fact that plaintiff initiated any conversation with the Union at all. See generally Compl. Moreover, here, plaintiff did not prepare his original complaint, nor his FAC, *pro se*.

The Court instead finds Scott v. Virginia Port Auth., No. 2:17CV176, 2018 WL 3232825 (E.D. Va. Feb. 7, 2018), report and recommendation adopted, No. 2:17CV176, 2018 WL 1508592 (E.D. Va. Mar. 27, 2018) instructive. There, the plaintiff alleged in his FAC for the first time that he "afforded ample opportunities for [his union] to represent him on this discrimination claim through at least December 31, 2016, but [the union] never acknowledged this claim of [his] or offered to represent him on the discrimination claims," and that nine months after his termination, the plaintiff "had still received no indication from the union that it was pursuing his discrimination claim." Id. at *6. The Scott court determined that his added hybrid Section 301 claim did not relate back because the plaintiff's original complaint "did not allege that [the union] failed to adequately represent him in the pursuit of his grievance against [his employer]." Id. at *6-8. The court further determined that the claim that his employer discriminated against him and the claim that the union did not fairly represent him are "based on different facts and circumstances." Id.

Accordingly, the Court is not persuaded by plaintiff's argument at the hearing that it matters that the cases defendants rely on involve a union's unsatisfactory actions in completed arbitration proceedings, rather than on a union's failure to take action as contended here. Rather, the Court concludes that for hybrid Section 301 claims based on a union's "*inaction[]*" to relate back, id., the original complaint must articulate allegations related to that inaction—in much the same way numerous other courts have ruled that such claims based on a union's unsatisfactory actions relate back only if the

## V. CONCLUSION

Counts one, three, four, five, and six are completely preempted by Section 301 of the LMRA and are converted into a federal hybrid Section 301 claim. In Count two, plaintiff's state law claims based on the timing of payment and nonpayment are similarly preempted and converted into a hybrid Section 301 claim. Plaintiff's federal hybrid Section 301 claim is time-barred under the applicable six-month statute of limitations and is dismissed without prejudice and with leave to amend.

Plaintiff's independent state law claim for failure to pay minimum wage is dismissed without prejudice and with leave to amend.

Plaintiff shall file a Second Amended Complaint, if any, within twenty-one (21) days of this order.

IT IS SO ORDERED.

| | | |
|---|---|---|
| | 00 | : 18 |
| Initials of Preparer | CMJ | |

original pleading articulates allegations suggesting those unsatisfactory actions, see e.g., Heaning v. NYNEX - N.Y., 945 F. Supp. 640, 643 (S.D.N.Y. 1996).